**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| GCIU--Employer Retirement Fund | : | Case No. 3:08 CV 00658 |
| Plaintiff, | : | |
| v. | : | |
| Toledo Printing Company | : | **MEMORANDUM DECISION AND** |
| | : | **ORDER** |
| Defendant. | | |

The parties have consented to have the undersigned Magistrate Judge conduct all proceedings and enter judgment in this case filed pursuant to Employee Retirement Income Security Act (ERISA), 29 U. S. C. §§ 1001 *et. seq.* and 1301 *et seq*. Pending is Plaintiff's unopposed Motion for Summary Judgment (Docket No. 23). Having considered the parties' pleadings and relevant law, the Magistrate grants the Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND

The following facts have been adopted from the Plaintiff's Complaint.

Plaintiff is an employee benefit plan as defined in 29 U. S. C. § 1102(3) (Docket No. 1, ¶ 3). Plaintiff is designated in the Collective Bargaining Agreement (CBA) entered into by Plaintiff and the Employing Printers of Graphic Communications Union Local 55-C and the Graphic Communications Union Local 55-C (Unions) for a period commencing on September 1, 2003 through August 31, 2005 (Docket No. 1, ¶ 4).

Defendant, an Ohio corporation, was engaged in the commercial printing business within the Northern District of Ohio, Western Division (Docket No. 1, ¶ 5). Defendant agreed to be bound by the terms in the CBA, including the Agreement and Declarations of Trust establishing the employee benefit

plans, entered into at Toledo, Ohio, by and between the Unions for a period effective from September 1, 2003 to August 31, 2005 (Docket No. 1, ¶ 7). During the pendency of the CBA, Defendant was the employer of members of the union who were subject to the CBA (Docket No. 1, ¶ 5).

On October 2, 2006, Defendant informed Plaintiff that as of September 1, 2006, it had closed the doors of its business and was in the process of "winding up" the corporation (Docket No. 1, ¶ 8; Docket No. 23, Exhibit 5). In accordance with ERISA and Plaintiff's Withdrawal Liability Procedures, on April 30, 2007, Plaintiff provided Defendant with a Notice of Complete Withdrawal Liability and Demand for payment pursuant to ERISA 29 U. S. C. § 1399 (b)(2) (A)[1] (Docket No. 23, Exhibit 4). Included in the notice was a determination of Defendant's liability in the amount of $37,432 and a payment schedule (Docket No. 1, ¶s 9 & 10). There is no evidence that Plaintiff requested administrative review of the liability, identified any inaccuracy in the determination of amount or provided any relevant information following receipt of the April 30, 2007 Notice (Docket No. 1, ¶ 12).

On July 31, 2007, Plaintiff served Defendant, by certified mail, with a Notice of Failure to Pay Withdrawal Liability and Demand for Cure (Notice) in accordance with 29 U. S. C. § 1399(c)(5)[2] that

---

[1] 29 U.S.C. §1399(b)(2)(A), provides:

No later than 90 days after the employer receives the notice described in paragraph (1), the employer–
**(i)** may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments,
**(ii)** may identify any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the employer, and
**(iii)** may furnish any additional relevant information to the plan sponsor.

[2] 29 U. S. C. § 1399(c)(5) provides:
In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means–
**(A)** the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and

expressly warned that failure to pay within 60 days of receipt of the notice constituted a default (Docket No. 1, ¶ 13; Docket No. 23, Exhibit 5). There is no evidence that Plaintiff requested administrative review of the liability, identified any inaccuracy in the determination of amount or provided any relevant information following receipt of the July 31, 2007, Notice.

## II. JURISDICTION

Federal courts have subject matter jurisdiction over suits brought by parties who have standing to assert a cause of action pursuant to ERISA. *Metropolitan Life Insurance Company v. Marsh,* 119 F.3d 415, 417 (6th Cir. 1997). Under federal law, a fiduciary of an ERISA-regulated plan may bring a civil action to obtain appropriate equitable relief to enforce any provision of the ERISA plan. 29 U. S. C. § 1132(a)(3)(B)(ii) (Thomson Reuters/West 2008). This Court has jurisdiction to address Plaintiff's claims.

## III. ANALYSIS

In the Complaint, Plaintiff contends that all conditions to be performed by Plaintiff have been performed, and Defendant, as shown above, has failed, neglected and refused to pay the withdrawal liability, cure the failure to pay in accordance with the payment schedule or enforce his right to dispute withdrawal liability. The sole issue before the Court is whether the Plaintiff is entitled to judgment as a matter of law for the withdrawal liability amount that Defendant is obligated to pay.

Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bennett v. City of Eastpointe,* 410 F.3d 810, 817 (6th Cir. 2005) (*citing* FED. R. CIV. P. 56(c)). The burden is generally on

---

(B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by "showing-that is, pointing out to the district court-that there is an absence of evidence to support the non-moving party's case." *Id*. (*citing Celotex Corp. v. Catrett,* 106 S. Ct. 2548, 2553-2554 (1986) (internal quotation marks omitted)). In reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. *Id.* Rather, the evidence should be viewed in the light most favorable to the non-moving party. *Id.* (*citing Anderson v. Liberty Lobby, Incorporated,* 106 S. Ct. 2505, 2513 (1986)). Thus, the facts and any inferences that can be drawn from those facts, must be viewed in the light most favorable to the non-moving party. *Id.* (*citing Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 106 S. Ct. 1348, 1356 (1986)).

ERISA helps assure that private-sector workers receive the pensions that their employers promise them. *Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Company*, 115 S. Ct. 981, 985 (1995). To achieve this goal, ERISA requires employers to make contributions that would produce pension plan assets sufficient to meet future vested pension liabilities; it mandates termination insurance to protect workers against a plan's bankruptcy; and, if a plan becomes insolvent, it holds any employer who had withdrawn from the plan during the previous five years liable for a fair share of the plan's under funding. *Id*. (*citing* 26 U.S.C. § 412 (minimum funding standards); 29 U.S.C. § 1082 (same); 29 U.S.C. § 1301 *et seq.* (termination insurance); 29 U.S.C. § 1364 (withdrawal liability)). Under 29 U. S. C § 1381, an employer who withdraws from a multiemployer pension plan must make withdrawal liability payments sufficient to cover that employer's fair share of the plan's unfunded vested liabilities. As a general matter, an employer completely withdraws from a plan with it "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U. S. C. § 1383(a) (Thomson Reuters/West 2009). As soon as practicable after an employer's withdrawal from the

plan, the plan sponsor must determine the employer's withdrawal liability, if any, prepare a statutorily-mandated schedule for payment of that liability in installments, notify the employer of the amount of the liability and the payment schedule, and "demand payment in accordance with the schedule." 29 U. S. C. §§ 1382, 1399(b)(1) (Thomson Reuters/West 2009). The amount of withdrawal liability and the periodic payment schedule for paying that liability are determined as of statutorily-specified dates calculated from the date of the complete withdrawal. *Milwaukee Brewery*, *supra*, 115 S. Ct. at 986.

Plaintiff sent a Notice to Defendant in which the withdrawal liability was established, a schedule for payment of that liability in installments was proposed and a demand for payment in accordance with the schedule was recommended. Plaintiff followed the necessary rules to secure payment. Defendant failed to arbitrate or otherwise communicate with Plaintiff regarding the calculation of liability or his ability to comply with the payment schedule. Plaintiff, therefore, is entitled to summary judgment.

## IV. CONCLUSION

Plaintiff's Motion for summary judgment is granted and judgment is entered against Defendant in the amount of $37,432 at the prevailing market rate of 12% per annum, as mandated under 29 U. S. C. § 1399(c)(6), from January 1, 2007, until the debt is satisfied. The disposition of Plaintiff's request for attorney fees is subject to further order of the Court.

So ordered.

/s/ Vernelis K. Armstrong
United States Magistrate Judge

**Date: April 17, 2009**